In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
T. Christopher KELLY, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

T. Christopher KELLY,
Respondent.

Supreme Court

*No. 2011AP1654–D.—Decided May 23, 2012.*

2012 WI 55

(Also reported in 814 N.W.2d 844.)

¶ 1. PER CURIAM. We review the report of the referee, Reserve Judge John B. Murphy, recommending that Attorney T. Christopher Kelly's license to practice law in Wisconsin be revoked, that he be required to pay $31,541.50 to the Lawyers' Fund for Client Protection (the Fund) as restitution for the amounts the Fund paid to Attorney Kelly's former clients due to his misconduct, and that he be required to pay the full costs of this disciplinary proceeding, which were $4,600.44 as of December 5, 2011. Because no appeal has been filed in this matter, our review proceeds pursuant to SCR 22.17(2).[1]

¶ 2. Attorney Kelly was admitted to the practice of law in Wisconsin in June 1980. He formerly maintained a private law practice in Madison. In March 2009 this court temporarily suspended Attorney Kelly's license due to his willful failure to cooperate with the grievance investigations being conducted by the Office

---

[1] SCR 22.17(2) states:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

of Lawyer Regulation (OLR). Attorney Kelly's license has remained temporarily suspended to the date of this opinion.

¶ 3. On July 20, 2011, the OLR filed a complaint against Attorney Kelly and an order to answer. The complaint alleged 51 separate counts of misconduct. Attorney Kelly was personally served with the complaint and order to answer on August 6, 2011.

¶ 4. On August 22, 2011, Attorney Kelly filed a very brief answer to the OLR's complaint. The answer consisted of a single sentence stating that Attorney Kelly denied "each and every material allegation of paragraphs 3 through 231." One of the two paragraphs Attorney Kelly's answer did not deny has some procedural significance for this proceeding. Paragraph 2 of the complaint alleged that Attorney Kelly resided at an address on Sidney Street in Madison. Thus, by not denying paragraph 2, Attorney Kelly's answer admitted that he did reside at the stated address.

¶ 5. On September 9, 2011, this court appointed Reserve Judge Murphy to act as the referee in this matter. On September 12, 2011, Referee Murphy sent a letter to Attorney Kelly and Attorney Thomas Basting, who was representing the OLR. The letter sent to Attorney Kelly was addressed to the Sidney Street address he had admitted. The letter announced that the referee would hold a scheduling conference via telephone on September 20, 2011, at 8:15 a.m. The letter directed Attorney Kelly to provide a telephone number at which he could be reached to Attorney Basting, who bore the responsibility of initiating the conference call. The letter further informed the attorneys that if the date and time did not work for one of them, that attorney should notify the referee, who would then arrange another mutually agreeable date and time.

¶ 6. The referee's report indicates that Attorney Basting called the referee at the appointed time on September 20, 2011. Attorney Basting informed the referee that he had not received any communication from Attorney Kelly. Thus, he did not have a number at which to call Attorney Kelly.

¶ 7. According to an affidavit filed by Attorney Basting, during the September 20, 2011 conference call, the referee instructed him to file a motion for a default and to schedule the motion for a telephonic hearing on October 11, 2011, at 8:15 a.m. Pursuant to the referee's direction, Attorney Basting filed a motion to strike the answer that Attorney Kelly had filed and for a declaration of a default against Attorney Kelly. The motion was again addressed to Attorney Kelly at the Sidney Street address.

¶ 8. At the scheduled time on October 11, 2011, Attorney Basting again called the referee. Attorney Kelly did not call either the referee or Attorney Basting at the time of the hearing, nor did he otherwise contact either of them.

¶ 9. Although there is not a transcript of the October 11, 2011 telephonic hearing, it appears that the referee orally found Attorney Kelly to be in default due to his failure to appear at the telephonic scheduling conference and the telephonic motion hearing. On October 13, 2011, Attorney Basting sent a letter to the referee submitting a proposed order that would strike Attorney Kelly's previously filed answer and find him to be in default. Attorney Basting's letter indicated that a copy of the letter was being sent to Attorney Kelly at the Sidney Street address. It further advised Attorney Kelly that he had 15 days to object to the form of the

order and that if he failed to object, the referee would sign the proposed order and the matter would proceed on a default basis.

¶ 10. Attorney Kelly did not respond. On October 30, 2011, Referee Murphy signed an order entitled "Order Striking Answer and Finding Respondent in Default."[2] In the order, the referee struck Attorney Kelly's answer and found that Attorney Kelly was in default "for failing to attend the scheduling conference and for failing to appear at the motion hearing."

¶ 11. In the cover letter that accompanied the October 30, 2011 order, a copy of which was sent to Attorney Kelly at the Sidney Street address, the referee advised both attorneys that they should provide the referee with their respective recommendations for discipline by November 11, 2011.

¶ 12. The OLR submitted a letter setting forth its position that Attorney Kelly's license to practice law in Wisconsin should be revoked. The OLR's letter also stated that it was requesting that Attorney Kelly be required to pay $31,541.50 in restitution to the Fund to reimburse it for payments that it had made to certain specified clients. Attorney Kelly did not submit a sanction letter or memorandum.

¶ 13. On November 14, 2011, the referee filed his report and recommendation. The report did not expressly state that the referee was accepting as true all of the allegations of the OLR's complaint, which would

---

[2] Because this is an attorney disciplinary matter in which only this court can issue a final judgment, the referee did not enter a default judgment, as is contemplated in the rules of civil procedure for "standard" civil actions, but did declare Attorney Kelly to be in default and proceeded in the matter as if no answer had been filed.

follow from a finding of a default, nor did it recount the specific allegations of the complaint, but the report did state that Attorney Kelly "is guilty of fifty-one (51) violations of the Supreme Court Rules." This conclusion indicates that the referee accepted as true all of the allegations of the complaint.

¶ 14. The OLR's complaint describes Attorney Kelly's conduct in connection with the representation of 12 criminal defendants. It also addresses a thirteenth matter where Attorney Kelly failed to respond to the OLR's request for information about a grievance.

¶ 15. Repeating the allegations of each separate matter here is not necessary. It is sufficient to describe the general pattern that each of the 12 representations followed. At the beginning of a representation, Attorney Kelly collected a substantial advance "flat" fee in exchange for his promise either to assess a convicted individual's case for possible postconviction or appellate challenges or to pursue either a postconviction motion in the circuit court or an appeal. In most cases Attorney Kelly did no substantial work on the individual's case. In a couple of cases he did some work, but then stopped his efforts before they were completed. He routinely failed to respond to inquiries from the clients or their families, some of whom were paying Attorney Kelly's attorney fees. When he did communicate with the client or a family member, Attorney Kelly indicated that he was working on the matter and would soon have the promised legal assessment, motion or brief for the client. Attorney Kelly, however, would not perform the promised services. In each situation, the OLR ultimately sent a grievance to Attorney Kelly and made multiple requests to him for information about the grievance. Attorney Kelly failed to respond to the OLR's

requests, which ultimately resulted in this court's temporary suspension of his license in March 2009.

¶ 16. Among the 51 counts of misconduct found by the referee were ten counts of demonstrating a lack of diligence, in violation of SCR 20:1.3.[3] Ten of the counts involved Attorney Kelly's failure to communicate with the client or the client's family, in violation of the current and former versions of SCR 20:1.4(a).[4] The referee further found that in seven instances Attorney Kelly had committed professional misconduct by failing to return all or a portion of the advance fees he had collected from his clients. SCR 20:1.16(d).[5] In all 13 matters, Attorney Kelly failed to respond to the OLR's

---

[3] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Former SCR 20:1.4(a) (effective through June 30, 2007), provided that a lawyer shall "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Current SCR 20:1.4(a) (effective July 1, 2007) states as follows:

> (a) A lawyer shall:

> (1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules;

> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

> (3) keep the client reasonably informed about the status of the matter;

> (4) promptly comply with reasonable requests by the client for information; and

> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

[5] SCR 20:1.16(d) states:

111

requests for information during its investigation of his conduct, in violation of either SCR 22.03(2)[6] or SCR 22.03(6).[7]

¶ 17. Consistent with the OLR's request, the referee recommended that Attorney Kelly's license to practice law in Wisconsin be revoked as discipline for his professional misconduct. The referee further recommended that Attorney Kelly be required to pay restitution to the Fund for the $31,541.50 it had paid to compensate the victims of his misconduct. The referee also recommended that Attorney Kelly should be ordered to pay the full costs of this proceeding.

---

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] SCR 22.03(2) provides as follows:

> Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[7] SCR 22.03(6) states: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

¶ 18. Our review of the referee's findings of fact, conclusions of law, and sanction recommendation follows long-established standards. Specifically, we affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the ref' eree's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 19. Before turning to the merits of the conclusions of misconduct, we first address the referee's finding that Attorney Kelly was in default. In considering this matter, we look to the rules of civil procedure, which are applicable to proceedings before a referee in attorney disciplinary cases. SCR 22.16(1). This is not a case where a defendant or respondent fails to join issue through an answer or other responsive pleading. A defendant's or respondent's failure to join issue is the usual situation in which a default may be declared. *See* Wis. Stat. § 806.02(1) (2009–10)[8] ("A default judgment may be rendered as provided in subs. (1) to (4) if no issue of law or fact has been joined and if the time for joining issue has expired.").

¶ 20. In this case Attorney Kelly did file an answer, which, while brief, sufficiently joined issue with the OLR's complaint. Thus, the only possible way to

_____

[8] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

find Attorney Kelly to be in default was by means of striking his answer as a sanction for misconduct in the action.

¶ 21.　Section 802.10(7) of the Wisconsin Statutes provides that violations of a scheduling or pretrial order can subject a party to the sanctions authorized in Wis. Stat. §§ 802.05 (signing a false or frivolous pleading), 804.12 (failing to provide discovery), and 805.03 (failure to prosecute or comply with procedural statutes). Section 802.10(7), Stats., has been interpreted to mean that the failure to attend a scheduling conference is a failure to comply with a scheduling order that can subject a party to a sanction. *See, e.g., Gaertner v. 880 Corp.,* 131 Wis. 2d 492, 501–02, 389 N.W.2d 59 (Ct. App. 1986). Thus, it seems clear that the referee had authority to impose some sort of sanction against Attorney Kelly due to his failure to appear for the telephonic scheduling conference and subsequent failure to appear for the default motion telephonic hearing.

¶ 22.　The striking of a timely answer and the granting of a default, however, is a drastic sanction. The appellate courts of this state have indicated that under the various rules authorizing the imposition of sanctions, the granting of a default against a defendant is a sanction that may be used only where the trial court has determined that the defendant's violation was egregious or in bad faith. *See, e.g., Schneider v. Ruch,* 146 Wis. 2d 701, 707–08, 431 N.W.2d 756 (Ct. App. 1988) ("Under other statutes empowering the trial court to impose sanctions for failure to comply with court orders, failure to prosecute, and failure to make discovery, the Wisconsin Supreme Court and the court of appeals have said that dismissal is a drastic penalty that should be imposed only in cases of egregious conduct by a

party. [case citations omitted]"); *Gaertner,* 131 Wis. 2d at 501–02 (upholding trial court's striking of answer and granting of default due to failure of defendants to attend scheduling conference where trial court found defendants' conduct to be egregious).

¶ 23. The referee's order striking Attorney Kelly's answer and finding him to be in default indicated that it was based on Attorney Kelly's failure to appear at both the initial scheduling conference and the default motion hearing. It did not, however, include a specific finding that Attorney Kelly's conduct was either egregious or in bad faith. While including such an explicit finding in a default order is certainly the better practice, the lack of such an explicit finding does not require that we remand the matter to the referee. An appellate court may affirm a trial court's sanction if the trial court implicitly found the party's conduct to be egregious and the facts in the record "provide a reasonable basis on review for the court's conclusion." *Schneller v. St. Mary's Hospital,* 162 Wis. 2d 296, 311, 470 N.W.2d 873 (1991); *Sentry Ins. v. Davis,* 2001 WI App 203, ¶ 22, 247 Wis. 2d 501, 634 N.W.2d 553.

¶ 24. Here the record, including the referee's October 30, 2011 order, indicates that the referee impliedly found Attorney Kelly's conduct to be egregious. Moreover, the facts in the record do provide a reasonable basis for that conclusion. It is important to note that the referee did not strike Attorney Kelly's answer immediately upon his failure to appear for the initial scheduling conference. Instead, the referee suggested that the OLR should bring a motion to strike the answer and find Attorney Kelly to be in default. The notice of that motion and the subsequent hearing gave

Attorney Kelly a second opportunity to appear and participate in the action. He did not do so, but instead failed to appear yet again. In addition, that motion hearing was not Attorney Kelly's last opportunity to be heard. The OLR's counsel submitted a proposed order and, pursuant to the referee's direction, informed Attorney Kelly that he had 15 days to object to the form of the order. This was a third opportunity to participate, which Attorney Kelly again chose not to take. Each of the communications that preceded these three separate opportunities to participate was sent to the address that Attorney Kelly's answer admitted was his proper current address.[9] Thus, it is reasonable to conclude that Attorney Kelly received notice of the proceedings in this case, but intentionally chose not to participate. Such repeated refusals to engage in the disciplinary process warrant a finding that Attorney Kelly's pattern of failure to appear or participate constituted egregious conduct that merited the striking of his answer and proceeding on the allegations of the OLR's complaint.

¶ 25. Because the referee properly struck Attorney Kelly's answer and found him in default, the factual allegations of the OLR's complaint are accepted as true for purposes of this proceeding. We agree with the referee that those facts support a conclusion of profes-

[9] Indeed, Attorney Kelly was given a fourth opportunity to participate when the referee asked the parties to submit memoranda regarding the appropriate sanction in this matter. Attorney Kelly again chose not to participate. While that opportunity came after the referee had issued the order striking Attorney Kelly's answer and finding him in default, it provides additional support for the conclusion that Attorney Kelly would not have participated in this proceeding no matter how many opportunities he was given.

116

sional misconduct on each of the 51 counts of misconduct set forth in the complaint.

¶ 26. We now turn to the question of the appropriate level of discipline. The facts detailed in the complaint demonstrate a clear pattern of neglect by Attorney Kelly of his clients' needs and objectives and of disregard for his obligations as an attorney in this state. Moreover, even though on most representations Attorney Kelly did little or no work, he repeatedly refused to refund any portion of the thousands of dollars he had obtained from the clients or their relatives. In a number of the matters, Attorney Kelly also refused to return the file to the client or to forward it to the client's new attorney. Attorney Kelly repeatedly refused to respond to the grievances filed by his clients or to the OLR's requests for information. Finally, Attorney Kelly's misconduct was not an isolated or temporary occurrence. It occurred in 12 separate representations and in some situations lasted for several years. We therefore conclude that the severe sanction of the revocation of his license to practice law in Wisconsin must be imposed to protect the public from a repetition of this misconduct and to deter other attorneys from engaging in similar misconduct.

¶ 27. We further agree with the referee that Attorney Kelly must be held responsible for the $31,541.50 that the Fund had to pay to the clients harmed by his misconduct, and that he must bear the full costs of this disciplinary proceeding.

¶ 28. IT IS ORDERED that the license of T. Christopher Kelly to practice law in Wisconsin is revoked, effective the date of this order.

¶ 29. IT IS FURTHER ORDERED that within 60 days of the date of this order, T. Christopher Kelly shall

pay restitution to the Wisconsin Lawyers' Fund for Client Protection in the amount of $31,541.50.

¶ 30. IT IS FURTHER ORDERED that within 60 days of the date of this order, T. Christopher Kelly shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 31. IT IS FURTHER ORDERED that payment of restitution to the Wisconsin Lawyers' Fund for Client Protection is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶ 32. IT IS FURTHER ORDERED that T. Christopher Kelly shall comply, if he has not already done so, with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.