**2015 WI 2**

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2013AP505-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Emory H. Booker, III, Attorney at Law: <br><br> Office of Lawyer Regulation, <br>        Complainant, <br>    v. <br> Emory H. Booker, III, <br>        Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST BOOKER

| | |
|---|---|
| OPINION FILED: | January 16, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

**2015 WI 2**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP505-D

STATE OF WISCONSIN            :   IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Emory H. Booker, III, Attorney at Law:**

**Office of Lawyer Regulation,**

           **Complainant,**

      **v.**

**Emory H. Booker, III,**

           **Respondent.**

**FILED**

**JAN 16, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY   disciplinary   proceeding.   *Attorney's   license revoked.*

¶1   PER CURIAM.   We review the report of the referee, Hannah C. Dugan, recommending that the court:   (1) revoke the Wisconsin law license of Attorney Emory H. Booker, III; (2) require Attorney Booker to pay a total of approximately $2,900 in restitution, divided among ten former clients; and (3) require Attorney Booker to pay the full costs of this disciplinary proceeding, which total $14,947.80 as of August 12,

2014. Because no appeal has been filed in this matter, our review proceeds pursuant to Supreme Court Rule (SCR) 22.17(2).

¶2 For the reasons explained below, we determine that Attorney Booker has admitted by default the allegations in the Office of Lawyer Regulation's (OLR) complaint. We therefore adopt the referee's findings of fact and conclusions of law. We agree with the referee that Attorney Booker's license to practice law in Wisconsin should be revoked. We also agree with the referee that Attorney Booker should be required to pay the entire costs of this proceeding. We decline to order restitution for reasons explained below.

¶3 Attorney Booker was admitted to the Wisconsin State Bar in 2000. He practiced in the Milwaukee area. His law license is administratively suspended for a number of reasons, including noncompliance with continuing legal education requirements.

¶4 Although Attorney Booker does not have a disciplinary history in Wisconsin, he has had considerable practice problems in the United States Bankruptcy Court for the Eastern District of Wisconsin, where he practiced extensively. We take judicial notice of the following events in that court. On December 20, 2011, the Eastern District bankruptcy court issued an order barring Attorney Booker from filing any further bankruptcy petitions in that court until he had demonstrated to the judges that he had obtained 15 hours of continuing legal education in the area of consumer bankruptcy practice. See In re Diane Jackson, No. 12-25456, order at 8 (Bankr. E.D. Wis. June 20,

2

2012). Attorney Booker satisfied this legal education requirement (id. at 8-9), but doing so did not solve his practice difficulties. In 2012, the Eastern District bankruptcy court penalized Attorney Booker $5,000 for his "clear and consistent pattern or practice of violating" various sections of the Federal Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Eastern District bankruptcy court's local rules. Id. at 73. Also in 2012, the Eastern District bankruptcy court asked the Wisconsin Department of Justice to investigate Attorney Booker's representation of debtors. The Department of Justice did so and, in 2013, the State of Wisconsin obtained an order and judgment against Attorney Booker requiring him to pay $36,768 in damages, representing fees he collected in bankruptcy cases in violation of the Federal Bankruptcy Code. State of Wisconsin v. Emory H. Booker III, 12-CV-990, judgment and order (E.D. Wis. Aug. 21, 2013).

¶5 In March 2013, the OLR filed a complaint and then an amended complaint in this matter. The amended complaint alleged 47 counts of misconduct.

¶6 In April 2013, after numerous unsuccessful attempts at personal service, the OLR attempted to serve Attorney Booker by sending, via certified mail, a copy of the amended complaint and amended order to answer to Attorney Booker's last known office address on file with the Wisconsin State Bar, as well as his last two known residences. See SCR 22.13(1).

¶7 In May 2013, the OLR filed a motion for default judgment against Attorney Booker. At the subsequent hearing on

3

this motion, Attorney Booker appeared and claimed that he never received service of the OLR's pleadings, and that he only learned of the default judgment hearing because the referee had emailed her scheduling order to him, in addition to mailing it. Attorney Booker provided a current mailing address, telephone number, and email address. The referee denied the OLR's motion for default judgment and gave Attorney Booker several weeks to file an answer.

¶8 Attorney Booker filed an answer in which he denied misconduct. During August through October 2013, Attorney Booker appeared at three telephonic status conferences held by the referee. In October 2013, Attorney Booker provided written responses to the OLR's discovery requests. In early November 2013, Attorney Booker did not appear at a deposition scheduled by the OLR, though there appears to have been initial confusion about the time and place of the deposition, and the OLR ultimately provided less than two full working days' notice of the deposition.

¶9 The OLR moved again for the entry of a default judgment. In an order filed November 18, 2013, the referee recommended that this court strike Attorney Booker's answer and declare him in default for providing "minimal information" in response to the OLR's discovery requests, and for "fail[ing] to attend a deposition and fail[ing] to attend two scheduled telephonic conferences, or to respond or communicates [sic] in any format to requests from the [OLR] or the referee." It is unclear from the record whether Attorney Booker received notice

4

of the hearing that culminated in the referee's striking of his answer and granting of default; the record lacks a copy of any notice of the hearing, and the OLR's counsel informed the referee at the hearing that he had not received a copy of any order scheduling the hearing.

¶10 This court has cautioned in previous disciplinary cases that the striking of a timely answer and the granting of a default is a "drastic sanction" that may be used only when the responding attorney has engaged in egregious or bad faith conduct. In re Disciplinary Proceedings Against Kelly, 2012 WI 55, ¶22, 341 Wis. 2d 104, 814 N.W.2d 844. We have instructed that it "is certainly the better practice" for referees to include an explicit finding of egregious or bad faith conduct in a default order. Id., ¶23. The referee in this case did not do so.

¶11 We may nevertheless accept the factual allegations of the OLR's amended complaint as true for purposes of this proceeding if we determine that the referee properly struck Attorney Booker's answer and found him in default. Id., ¶25. To do so, we must determine that the referee implicitly found Attorney Booker's conduct to be egregious or in bad faith, and that the facts of record provide a reasonable basis for this implicit finding. Id., ¶¶23-24.

¶12 Our review of the record showed that a question could be raised as to whether the referee had a reasonable basis to implicitly find that Attorney Booker engaged in egregious or bad faith behavior that would justify the striking of his answer and

5

a finding of default. We therefore ordered the parties to file written positions on this issue with the court. We additionally instructed Attorney Booker to state whether he wanted the referee's default order to stand. We warned that a failure by either party to respond to this court's order would be deemed a forfeiture of arguments regarding the referee's default order.

¶13 The OLR filed a response. It claimed that Attorney Booker's unexplained decision to stop participating in proceedings before the referee constituted an egregious abandonment of his defense.

¶14 Attorney Booker failed to file a response to this court's order.

¶15 We warned Attorney Booker in our previous order of the consequence of such non-participation: a forfeiture of arguments regarding the referee's default order. True to our word, we deem any objections to the referee's default order to have been forfeited. We therefore affirm the referee's default order striking Attorney Booker's answer and declaring him to be in default, and we accept the allegations of the OLR's amended complaint as true for purposes of this proceeding.

¶16 The allegations in the OLR's amended complaint (which, as noted, Attorney Booker has admitted by default) and the corresponding findings and conclusions by the referee are expansive. They amount to an omnibus indictment of Attorney Booker's conduct in numerous specified client matters and in broad categories of work, such as "State Debt Relief Matters," "'Pro Se' [Wis. Stat.] Chapter 128 Petitions," and "'Pro Se'

6

Bankruptcy Filings." Given the volume of the allegations, findings, and conclusions before the court, we do not repeat them all here. It is sufficient to provide the following summary information concerning the misconduct in this matter.

¶17 Attorney Booker promoted his law practice by labeling himself in advertisements as the "Light Hero"——a reference to his ability to keep electricity connected to the homes of financially troubled residents. For a time, Attorney Booker concentrated much of his practice on filing what are known as "Chapter 128 petitions" on behalf of homeowners facing the possible disconnection of utility services. A Chapter 128 petition is a state-court proceeding in which wage earners who are unable to pay a debt in full can make regular debt amortization payments over time. See Wis. Stat. § 128.21. Before August 2011, the utility company which provides electrical service to Milwaukee residents treated the filing of a Chapter 128 petition as an injunction preventing it from terminating a customer's service during the pendency of the case. Attorney Booker therefore filed Chapter 128 petitions on behalf of his clients in order to stay the utility from disconnecting his clients' service for non-payment.

¶18 The Chapter 128 petitions that Attorney Booker prepared were often faulty. Between May 2010 and March 2011, Attorney Booker filed several hundred Chapter 128 petitions, many of which did not use court-approved forms and did not contain required certification language.

7

¶19 Beginning in April 2011, Attorney Booker began ghostwriting Chapter 128 filings. That is, Attorney Booker would prepare and file certain documents and include return envelopes for the court to send correspondence to his post office box, but he would not appear as counsel of record. Many of Attorney Booker's filings were incomplete or noncompliant with the court's requirements. The information that Attorney Booker provided to his clients often consisted of information the clients could obtain without a fee at the courthouse. Attorney Booker also failed to adequately explain the limited nature of his representation to his clients.

¶20 In mid-2011, a Milwaukee County Circuit Court judge discovered that Attorney Booker was ghostwriting Chapter 128 filings. The judge wrote to Attorney Booker and asked him to identify himself to the court and explain his conduct. Attorney Booker did not respond.

¶21 In August 2011, a Milwaukee County Circuit Court judge ruled that Chapter 128 petitions did not stay utility disconnection for nonpayment. This ruling meant that the only place where a customer could initiate a court action that would result in a utility being barred from disconnecting service was the federal bankruptcy court. Attorney Booker responded by changing the focus of his practice to bankruptcy filings in federal bankruptcy court.

¶22 By December 2011, the Eastern District bankruptcy court had encountered enough problems with Attorney Booker's filings that the court barred him from filing further bankruptcy

petitions in that court until he had obtained 15 hours of continuing legal education in the area of consumer bankruptcy practice. In February 2012, Attorney Booker filed verification with the court that he'd obtained the required educational hours. Accordingly, in March 2012, the court reinstated Attorney Booker's privileges to file new bankruptcy petitions.

¶23 Between April 2012 and June 2012, the Eastern District bankruptcy court received more than 140 petitions which showed the debtor as filing pro se and listed a business called "1st Choice Bankruptcy Preparation" in Indiana as the petition preparer. Attorney Booker helped prepare these filings even though he never appeared as counsel of record. In exchange for a fee, Attorney Booker provided the debtors with a packet of information and sent the debtors' financial information to 1st Choice Bankruptcy, which in turn prepared the bankruptcy petitions. Attorney Booker did not adequately explain the limited nature of his representation to his clients; some debtors believed that Attorney Booker was their attorney for the entire bankruptcy proceeding. In many cases, Attorney Booker conducted no meaningful review as to the debtor's suitability for bankruptcy. Much of the information that Attorney Booker provided to his clients was inaccurate. Many of the court filings contained incorrect information or were missing required documents. Attorney Booker failed to make certain disclosures to clients that are required by the United States Bankruptcy Code. He charged unreasonable fees for his services.

¶24 The OLR's amended complaint (the allegations of which Attorney Booker has admitted by default) and the referee's report describe a variety of specific client matters, which are presumably intended to serve as representative examples of Attorney Booker's misconduct. All cases except one are bankruptcy matters. Each of the cases present variations on certain basic themes of misconduct: Attorney Booker failed to competently prosecute Chapter 128 petitions and federal bankruptcy petitions, resulting in their dismissal; he failed to complete his work in a timely fashion; he failed to return his clients' calls and emails; he charged advanced fees, which he did not place in trust, nor did he provide any of the notices required under SCR 20:1.15(b)(4m) for the alternative treatment of advanced fees; he charged unreasonable fees; he failed to return unearned fees; and he did not fully cooperate with the OLR investigation.

¶25 From the above-described misconduct, the OLR charged and the referee found 47 counts of misconduct, which may be grouped as follows:

- Failing to act with reasonable diligence and promptness in representing a client, see SCR 20:1.3 (Counts 1, 17).
- Failing to properly communicate with clients, see SCR 20:1.4 (Counts 2, 3, 8, 18, 23).
- Failing to cooperate with an OLR investigation and to provide relevant information, to answer questions fully, or to furnish documents in the course of an OLR

10

investigation, <u>see</u> SCRs 20:8.4(h), 21.15(4), 22.03(6) (Counts 4, 32).

- Knowingly disobeying an obligation under a tribunal's rules, <u>see</u> SCR 20:3.4(c) (Counts 5, 10, 11, 15, 25, 26, 31, 39, 42, 43, 44).

- Making a false statement of fact to a tribunal, <u>see</u> SCR 20:3.3(a)(1) (Counts 6, 19).

- Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, <u>see</u> SCR 20:8.4(c) (Counts 6, 12, 19, 21, 28, 47).

- Failing to provide competent representation, <u>see</u> SCR 20:1.1 (Counts 7, 13, 16, 20, 22, 29).

- Charging an unreasonable fee, <u>see</u> SCR 20:1.5(a) (Counts 9, 14, 24, 30, 33, 36, 39, 42, 44).

- Engaging in conduct that violates a statute, supreme court rule, supreme court order, or supreme court decision regulating the conduct of lawyers, <u>see</u> SCR 20:8.4(f) (Counts 10, 15, 25, 31).

- Unreasonably limiting the scope of representation, <u>see</u> SCR 20:1.2(c) (Counts 8, 23).

- Failing to include an attorney name and office address in advertisements, <u>see</u> SCR 20:7.2(c) (Count 27).

- Failing to hold unearned fees in trust, <u>see</u> SCR 20:1.15(b)(4) (Counts 34, 37, 40, 45).

- Failing to return fees or unexpended costs to the client, <u>see</u> SCR 20:1.16(d) (Counts 35, 38, 41, 43, 46).

11

¶26 Because we affirm the referee's default order striking Attorney Booker's answer and declaring him to be in default, we accept the allegations of the OLR's amended complaint as true for purposes of this proceeding. We agree with the referee that those facts support a conclusion of professional misconduct on each of the 47 counts of misconduct set forth in the amended complaint and described above.

¶27 We now turn to the question of the appropriate level of discipline. The undisputed facts show a clear pattern of neglect by Attorney Booker of his clients' needs and objectives, which is especially troubling given that most of Attorney Booker's clients were in serious financial distress and thus were in a particularly vulnerable position. Attorney Booker also showed a patent disregard for his obligations as an attorney. He made a habit of providing inaccurate or misleading information to his clients and to the courts. He ignored court orders and requirements. He repeated his misconduct again and again, in scores of cases in federal and state courts over a lengthy period. He has never acknowledged his wrongdoing. He has failed to fully cooperate with the disciplinary process. License revocation is necessary in this case to impress upon Attorney Booker the seriousness of his professional misconduct, to protect the public from similar misconduct in the future, and to deter other attorneys from engaging in similar misconduct.

¶28 We further conclude that full costs are to be imposed on Attorney Booker. Attorney Booker has failed to object to the OLR's requested costs or allege any factors that would justify a

12

reduction in costs. Consequently, Attorney Booker shall bear the entire costs of this disciplinary proceeding.

¶29 As to the issue of restitution, the OLR requested and the referee recommended that this court order Attorney Booker to pay restitution to ten different individuals. However, we note that in State of Wisconsin v. Emory H. Booker III, Eastern District Case No. 12-CV-990, the State of Wisconsin has already obtained an award against Attorney Booker of over $36,000 in damages, representing fees that Attorney Booker collected from approximately 130 debtors in violation of the Bankruptcy Code. At least half of the clients for whom the OLR now requests restitution were included in the client matters at issue in this federal lawsuit. As for the remaining clients for whom the OLR seeks restitution, the OLR's amended complaint and the referee's report suggest that the Eastern District bankruptcy court has already ordered Attorney Booker to pay restitution to several of these clients. Neither the OLR nor the referee explain why this court should order restitution that would duplicate that already ordered in the federal court system.

¶30 Given the imprecise state of the record as it relates to restitution, the court declines to make a specific award of restitution. Instead, we deem it appropriate to require, as a condition of the reinstatement of his Wisconsin law license, that Attorney Booker demonstrate to the court that he has reimbursed any unearned fees to each client mentioned in the OLR's amended complaint.

13

¶31 IT IS ORDERED that the license of Emory H. Booker, III to practice law in Wisconsin is revoked, effective the date of this order.

¶32 IT IS FURTHER ORDERED that within 60 days of the date of this order, Emory H. Booker, III shall pay the Office of Lawyer Regulation the costs of this proceeding.

¶33 IT IS FURTHER ORDERED that, as a condition of reinstatement of his license to practice law in Wisconsin, Emory H. Booker, III shall reimburse any unearned fees to each client mentioned in the Office of Lawyer Regulation's amended complaint, and shall provide the court with a written accounting of any such reimbursements.

¶34 IT IS FURTHER ORDERED that, to the extent he has not already done so, Emory H. Booker, III shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.