In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Ryan D. LISTER, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Ryan D. LISTER, Respondent-Appellant.

Supreme Court

*No. 2004AP2767–D.—Decided July 27, 2012.*

2012 WI 102

(Also reported in 817 N.W.2d 867.)

¶ 1. PER CURIAM. This attorney disciplinary matter comes to us in an unusual procedural posture.

The Office of Lawyer Regulation (OLR) has filed a motion in an underlying disciplinary proceeding asking this court to issue an order to show cause why Attorney Ryan D. Lister should not be found to be in contempt or to have sanctions imposed on him due to his failure to comply with the mandate of our previous disciplinary decision. *In re Disciplinary Proceedings Against Lister*, 2007 WI 55, 300 Wis. 2d 326, 731 N.W.2d 254 (*Lister I*). We referred the OLR's motion to a referee, who was directed to make findings as to the relevant facts, conclusions of law concerning whether or not Attorney Lister had violated our orders, and a recommendation regarding the sanction, if any, that should be imposed on Attorney Lister. Neither party has objected to the referee's report and recommendation. We therefore now review that report and recommendation for the purpose of ruling on the OLR's motion.

¶ 2. In *Lister I*, which was issued on May 17, 2007, in Case No. 2004AP2767–D, we suspended Attorney Lister's license to practice law in Wisconsin for a period of five months. We also ordered Attorney Lister to pay $12,209 in restitution to client J.A. to reimburse her for a default judgment that had been entered against her due to Attorney Lister's misconduct and for the fee payments she had made to Attorney Lister. The specific paragraph of our order addressing this restitution obligation read as follows:

> IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Lister shall pay restitution to J.A. in the amount of $12,209. If restitution to J.A. is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amount within that time, the license of

534

Attorney Lister to practice law in Wisconsin shall remain suspended until further order of this court.

300 Wis. 2d 326, ¶ 84.

¶ 3. Attorney Lister did not pay the specified restitution amount within 60 days of the May 17, 2007 order. On August 15, 2007, Attorney Lister filed a motion seeking an extension of time to pay the restitution to J.A (and to pay the costs of the disciplinary proceeding) because his financial resources were limited, especially during the suspension of his license to practice law. This court initially held his motion in abeyance and directed him to negotiate a payment plan with the OLR.

¶ 4. Attorney Lister proposed to the OLR that he begin making $500 monthly payments in December 2007, one month after the expiration of his suspension and expected reinstatement to the practice of law. The payments were to be made to J.A. until the court-ordered restitution was paid in full. Once that had occurred, the payments would be made to the OLR and applied to the cost judgment. The OLR agreed to this proposal, and the parties communicated their agreement to this court.

¶ 5. We incorporated the parties' negotiated payment plan into an order dated October 10, 2007. The relevant mandate paragraph of that order stated as follows:

IT IS ORDERED that respondent-appellant's motion for an extension of time to make payments toward the restitution and cost assessments imposed in the court's May 17, 2007 decision is granted. Beginning on December 15, 2007, Attorney Ryan D. Lister shall make monthly payments in the amount of $500 until the full amounts of the restitution and cost assessment are paid. Such payments shall be made to client J.A. until the

535

restitution amount is fully paid. Thereafter, the payments shall be made to the Office of Lawyer Regulation until the cost assessment is fully paid. The parties shall meet approximately six months after the beginning date of the payments to review Attorney Lister's financial status and to determine whether the payment amount should be adjusted. If a party believes the amount should be adjusted, the party shall file a motion seeking an adjustment in the payment amount.

¶ 6. On November 9, 2011, the OLR filed a motion in Case No. 2004AP2767–D requesting this court to issue an order directing Attorney Lister to show cause why he should not be held in contempt or why a sanction should not be imposed upon him for failure to comply with this court's May 17, 2007 and October 10, 2007 orders. The affidavit in support of the OLR's motion stated, in summary, that after an initial period of monthly payments, Attorney Lister had made only sporadic payments after being cajoled by the OLR, had not made any payments for extended periods of time, and was substantially in arrears on his obligations under the payment plan set forth in the court's October 10, 2007 order. The OLR's affidavit further noted that Attorney Lister still owed $10,132.35 in costs from Case No. 2004AP2767–D and another $9,250.86 in costs from a subsequent disciplinary proceeding, Case No. 2008AP2766–D.

¶ 7. On January 25, 2012, this court issued an order directing Attorney Lister to respond to the allegations in the OLR's motion and supporting affidavit and to demonstrate that he was in compliance with his obligations under the May 17, 2007 and October 10, 2007 orders. The order further referred the OLR's motion to Referee Timothy L. Vocke, who had handled the initial disciplinary proceedings in this case. The

536

order instructed the referee to make findings of fact as to all relevant facts regarding Attorney Lister's compliance or noncompliance with his obligations under the court's prior orders and to render conclusions of law as to whether or not Attorney Lister had violated those obligations. The order further directed the referee to make a recommendation as to the appropriate type of discipline or sanction, if any, that the court should impose on Attorney Lister if it determined that he had violated his obligations under the court's orders.

¶ 8. Attorney Lister's response to the OLR's motion admitted the truth of all but three paragraphs of the affidavit in support of the OLR's motion. Shortly before the scheduled date for the hearing before the referee, Attorney Lister and the OLR executed a stipulation. The stipulation essentially admitted the truth of the remaining paragraphs of the OLR's affidavit, except the parties agreed that Attorney Lister had made one additional $200 payment to the heirs of J.A. in February/March 2012, and that after the date of the OLR's motion Attorney Lister had communicated with the OLR regarding his failure to make payments to J.A.'s heirs and to execute a tax authorization form sent to him by the OLR.

¶ 9. The referee used the affidavit in support of the OLR's motion, which had essentially been admitted by Attorney Lister, and the stipulation to make findings of fact regarding Attorney Lister's conduct concerning his restitution obligation. Those findings of fact are summarized below.

¶ 10. According to a chart that was part of the stipulation, Attorney Lister made monthly payments to J.A. from December 2007 through October 2008, al-

537

though two payments were less than and one payment was more than the $500 amount required by the court's October 10, 2007 order.

¶ 11. Attorney Lister made no payment in November 2008, prompting the OLR to write a letter to him urging him to make timely payments or to call the OLR if he was financially unable to do so. Attorney Lister subsequently made a $300 payment in December 2008 and told the OLR that he was experiencing some financial hardship.

¶ 12. In late January and February 2009, Attorney Lister did make the required $500 payments but only after the OLR was again forced to communicate with him about the need to make the payments. Attorney Lister then stopped making payments for several months. By this time his total payments to J.A. were substantially lower than what was required under the payment plan in the October 10, 2007 order. Attorney Lister made a payment to J.A. in July 2009, after the OLR twice more was forced to communicate its displeasure with Attorney Lister's failure to make payments and to raise the possibility of seeking a sanction from this court.

¶ 13. In September 2009 J.A. sent a letter to the OLR expressing frustration at the fact that Attorney Lister was more than $4,000 behind on his payments. J.A. indicated that she was facing a serious medical emergency and needed the restitution funds from Attorney Lister. The OLR forwarded J.A.'s letter to Attorney Lister and spoke to him about the matter. Attorney Lister sent a single $500 payment to J.A. in October 2009, but then did not make further payments during the remainder of 2009 or the entirety of 2010.

¶ 14. J.A. passed away in April 2010, which resulted in Attorney Lister owing the remaining restitu-

tion amount to her heirs. The OLR located the heirs and facilitated a December 2010 agreement between Attorney Lister and the heirs, which called for Attorney Lister to make $250 monthly payments for the first six months, $500 monthly payments for the following six months, and then $1,000 monthly payments until the restitution was paid in full. Attorney Lister made only one $250 payment in January 2011. He made no further payments to J.A.'s heirs until the $200 payment in February/March 2012, which occurred after the OLR filed the present motion seeking a sanction against him.

¶ 15. Although the payment plan mandated in the court's October 10, 2007 order would have resulted in the full restitution amount to J.A. having been paid by December 2009, the stipulation acknowledged that Attorney Lister still owed $4,525 in restitution to J.A.'s heirs.[1] Attorney Lister further agreed that he had failed to comply with the restitution requirements of the May 17, 2007 and October 10, 2007 orders. He stipulated that although he had experienced financial difficulties at times, he was not indigent and could have consistently paid some amount each month, even if, at times, he may not have been able to pay the full $500 required amount. Attorney Lister further acknowledged in the stipulation that a pattern had developed where he had been inconsistent in making payments and after the initial period of compliance had made payments only after the OLR had cajoled him or raised the possibility

[1] The referee's finding of fact on this point used the $4,725 amount contained in the affidavit in support of the OLR's November 2011 motion. This finding of fact is clearly erroneous in light of the subsequent stipulation that Attorney Lister made a $200 payment in February/March 2012 and that the outstanding balance at the time of the stipulation in March 2012 was $4,525.

of reporting his noncompliance to this court. Finally, Attorney Lister also admitted that he had failed to return an authorization form sent to him by the OLR that would have allowed the OLR to review his recent tax returns.

¶ 16. The stipulation proposed that Attorney Lister should be given one final opportunity to make consistent monthly restitution payments, on the condition that his failure to do so would result in the automatic indefinite suspension of his license to practice law in this state. The stipulation set forth a payment schedule whereby Attorney Lister would make monthly payments in the amount of $500, beginning on May 1, 2012, with a final payment of $525 due on January 1, 2013. The stipulation proposed that Attorney Lister would be required to send the OLR a copy of each monthly payment by the fifth day of each month, and that the OLR could notify this court of any failure to receive such proof of payment, which would result in an immediate suspension order. At the hearing before the referee, the parties modified the stipulation to propose that in the event of a failure to provide proof of payment, the OLR would notify this court, which would impose a 60–day suspension of Attorney Lister's license.

¶ 17. Based on these facts, the referee made a number of legal conclusions. First, the referee stated that Attorney Lister had failed to comply with this court's orders of May 17, 2007, and October 10, 2007. Second, the referee concluded that, as of the date of the referee's report, Attorney Lister was not and had not been indigent. Third, the referee determined that Attorney Lister's failure to comply with this court's orders had been intentional. The referee further stated that he believed that this court had either inherent authority or authority under the contempt statutes, Wis. Stat. ch.

540

785, to impose remedial sanctions for disobedience of its orders, and that Attorney Lister was in continuing contempt for his disobedience of the court's 2007 orders.

¶ 18. Consistent with the proposal in the parties' stipulation, the referee recommended that the court impose a 60–day suspension on Attorney Lister, but stay the suspension as long as Attorney Lister complies with the new payment plan set forth in the stipulation.

¶ 19. As noted at the top of this opinion, the procedural posture of this matter is unusual. Under SCR 20:8.4(f), it is professional misconduct for an attorney to violate a supreme court order. Thus, the OLR could have moved forward with this matter by conducting an investigation and pursuing one of the options available under the rules, which included a new consensual private or public reprimand (SCR 22.09), a new stipulation submitted to the court for its approval or rejection (SCR 22.12), or the filing of a new disciplinary complaint (SCRs 22.11 and 22.13 through 22.17). If a new complaint had been filed, it would have initiated a new disciplinary proceeding with a new case number, which would have followed the standard procedures for disciplinary cases. *See* SCRs 22.13 through 22.17.

¶ 20. The OLR, however, did not follow any of these paths. It filed a motion in the original disciplinary proceeding asking this court to issue an order to show cause why Attorney Lister should not be held in contempt or why sanctions should not be imposed on him under the court's inherent authority to regulate the practice of law and to enforce its orders. There are no provisions in our rules that expressly authorize such a motion or that provide a procedure for deciding such a motion. The OLR contends, however, that it chose to

file a motion seeking an order to show cause because it wanted a quicker and more streamlined process for resolving this matter.

¶ 21. We have, on one occasion, been confronted with a similar motion filed in the underlying disciplinary proceeding that sought an order to show cause against an attorney who remained a member of the bar but undisputedly continued to practice law during a disciplinary suspension. *See In re Disciplinary Proceedings Against Hetzel,* 124 Wis. 2d 462, 369 N.W.2d 394 (1985).[2] Our decision in that matter, however, did not purport to create a procedure for resolving a dispute about disobedience of a prior order through a motion

---

[2] The OLR notes that there have also been situations where its predecessor, the Board of Attorneys Professional Responsibility (BAPR), filed motions seeking sanctions for contempt in the original disciplinary proceeding. In those cases, however, the attorneys' licenses to practice law had already been revoked prior to the court's orders regarding BAPR's contempt motions, which were generally unpublished. *See, e.g., In re Disciplinary Proceedings Against Straub,* 178 Wis. 2d 617, 504 N.W.2d 612 (1993) (granting petition for consensual license revocation); *In re Disciplinary Proceedings Against Moran,* 165 Wis. 2d 504, 477 N.W.2d 628 (1991) (revoking license); *In re Disciplinary Proceedings Against Hill,* 143 Wis. 2d 373, 421 N.W.2d 504 (1988) (granting petition for consensual license revocation); *In re Disciplinary Proceedings Against Elliott,* 133 Wis. 2d 110, 394 N.W.2d 313 (1986) (revoking license); *In re Disciplinary Proceedings Against Pasch,* 127 Wis. 2d 444, 380 N.W.2d 672 (1986) (published opinion holding attorney in contempt and imposing $300 fine for practicing law after revocation of his license). Thus, since the attorney's license had been revoked, a contempt motion in the original disciplinary proceeding was the most effective way for this court to exercise jurisdiction over the individual. That is different from the present situation where Attorney Lister remains a member of the bar and holds an active license to practice law in this state.

filed in the same case. Although the court did issue an order to show cause in that case, as requested by the Board of Attorneys Professional Responsibility (BAPR), it did not immediately rule on BAPR's motion, even though Attorney Hetzel failed to file a response to the order to show cause. Rather, the court referred BAPR's motion to a referee, who essentially treated the case as if BAPR had filed a new complaint against Attorney Hetzel. The referee conducted an evidentiary hearing and issued a report and recommendation, which the court reviewed in the normal fashion, ultimately revoking Attorney Hetzel's license to practice law in this state.

¶ 22. Given the similar unusual procedural posture we have faced with the OLR's motion here, we have moved forward in a similar fashion as we did in *Hetzel,* with a referral to a referee. The matter then proceeded before the referee essentially in the same way that a new complaint would be handled. Attorney Lister filed a response to the OLR's motion that identified facts and legal conclusions he disputed, the OLR submitted discovery requests to Attorney Lister, the referee scheduled an evidentiary hearing to resolve the factual disputes, the parties reached a stipulation that addressed the remaining factual disputes, and the referee issued a report that contained findings of fact, conclusions of law, and a recommendation.

■■

¶ 23. Because none of the existing rules specifically provides for an appeal from a referee's report issued in this context, the court issued an order that afforded the parties an opportunity to file objections to the referee's report. Neither party filed any objections to the referee's report. Accordingly, we will utilize the same review protocol we use when no appeal is filed in

an initial disciplinary proceeding. *See* SCR 22.17(2).[3] Specifically, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. *See In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We will determine the appropriate type and level of sanction or discipline given the particular facts of the case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 24. With the exception of the outstanding balance that remained on Attorney Lister's restitution obligation, as noted above, we find no clear error in the referee's findings of fact, and we adopt them. We also agree with the referee that those facts demonstrate that Attorney Lister consistently had some ability to make monthly payments to J.A. and her heirs, but he knowingly and intentionally chose to disobey this court's order to make monthly restitution payments to them.

¶ 25. This was not a situation where an attorney was unable to comply with an order of this court to make specified payments because of the attorney's lack of financial resources. It was a deliberate choice by Attorney Lister to place other personal expenditures above the payments explicitly ordered by this court. Moreover, this was not an isolated or short-term action;

---

[3] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

Attorney Lister engaged in a consistent pattern of disobeying the mandate of this court. What should have taken just over two years to complete has dragged on for more than four years, and there still remains a sizeable balance that is owed to J.A.'s heirs.

■

¶ 26. The stipulation executed by the OLR and Attorney Lister stated that it sought to give Attorney Lister a final chance to make the monthly payments he should have been making over the last several years. Given the indifference Attorney Lister has demonstrated to his obligations under this court's October 10, 2007 order, we believe that his final opportunity to pay his restitution obligation and to avoid a suspension should be much shorter in length. We grant Attorney Lister a period of 30 days from the date of this order to pay the *full* balance that remains to be paid to J.A.'s heirs. If Attorney Lister does not file documentation with the clerk of this court on or before August 27, 2012, demonstrating payment in full of the restitution obligation to J.A.'s heirs, his license to practice law in Wisconsin is suspended as of August 27, 2012, until such time as the restitution has been fully paid, documentation demonstrating such payment in full has been filed with the clerk of this court, *and* this court has issued an order reinstating his license.

■

¶ 27. We now turn to the issue of the costs of the OLR's motion and the proceedings that resulted from that motion. The OLR has filed a statement of costs showing total costs of $2,695.01 for this motion proceeding as of April 27, 2012. The OLR requests that the full costs of this motion proceeding be assessed against Attorney Lister. Attorney Lister has not objected to the OLR's request or to the reasonableness of the listed

costs. Accordingly, consistent with our general policy, we require Attorney Lister to pay the full costs of this motion proceeding.

■

¶ 28. We note that in addition to the remaining restitution amount that Attorney Lister must pay to J.A.'s heirs, he will now have three cost judgments that he will be required to satisfy. Our October 10, 2007 order provided that after Attorney Lister completed the payment of restitution to J.A., he was required to continue making $500 monthly payments to the OLR that were to be applied to the original cost judgment in Case No. 2004AP2767–D. We will impose that same obligation in this order with respect to all cost judgments entered against him. In other words, we will require him to make monthly payments of $500 to the OLR until all of the cost judgments have been satisfied. If Attorney Lister is financially unable to make such payments, he will be obligated to negotiate an appropriate payment amount with the OLR and to move this court for an adjustment of the payment amount. His failure to comply with this requirement may again subject him to additional sanctions.

¶ 29. Finally, because our rules currently do not contain provisions governing the procedure for filing and resolving motions in an underlying disciplinary proceeding that seek the imposition of sanctions due to a violation of this court's disciplinary orders, we direct the OLR to prepare and file a rule petition regarding this subject.

¶ 30. IT IS ORDERED that on or before August 27, 2012, Ryan D. Lister shall pay the remaining restitution amount to the heirs of J.A. and shall file with the clerk of this court documentation demonstrating such payment in full. If Ryan D. Lister fails to pay

the remaining restitution amount to the heirs of J.A. and to file documentation of such payment in full with the clerk of this court on or before August 27, 2012, the license of Ryan D. Lister to practice law in Wisconsin is hereby suspended as of August 27, 2012, until the restitution to the heirs of J.A. has been paid in full, documentation demonstrating such payment in full has been filed with the clerk of this court, and this court has issued an order reinstating the license of Ryan D. Lister to practice law in Wisconsin.

¶ 31. IT IS FURTHER ORDERED that beginning on October 1, 2012, Ryan D. Lister shall make monthly payments in the amount of $500 to the Office of Lawyer Regulation to be credited against all cost judgments entered against him, until all such cost judgments have been fully satisfied. If Attorney Lister is financially unable to make such payments, he shall attempt to negotiate an appropriate monthly payment amount with the Office of Lawyer Regulation and shall move this court for a modification of the obligation to pay the outstanding cost judgments.