# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2007AP2763-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Barry LeSieur, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant-Respondent,<br>   v.<br>Barry LeSieur,<br>       Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST LESIEUR

| | |
|---|---|
| OPINION FILED: | May 3, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2007AP2763-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Barry LeSieur, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  **v.**

**Barry LeSieur,**

      **Respondent-Appellant.**

**FILED**

**MAY 3, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. In this matter, we consider a motion filed by the Office of Lawyer Regulation (OLR) seeking a suspension of the license of Attorney Barry LeSieur to practice law in Wisconsin due to his alleged noncompliance with the conditions we imposed on his practice of law in a prior disciplinary opinion and order in this same proceeding. See In re Disciplinary Proceedings Against LeSieur, 2010 WI 117, 329 Wis. 2d 349, 789 N.W.2d 572 (LeSieur I). Because it appeared

that there were factual issues regarding whether Attorney LeSieur had violated his obligations under LeSieur I, we referred the OLR's motion to a referee with directions to conduct a hearing, to make findings of fact and conclusions of law regarding whether or not Attorney LeSieur had complied with our order, and to make a recommendation regarding the appropriate type and level of sanction, if any, that the court should impose on Attorney LeSieur, if noncompliance was found. After receiving the referee's report and recommendation, we issued an order to Attorney LeSieur directing him to show cause why his license should not be suspended as recommended by the referee. We now review the report and recommendation of the referee and Attorney LeSieur's response to the order to show cause.

¶2 Based on Attorney LeSieur's default as found by the referee, we conclude that Attorney LeSieur failed to comply with the order of this court in LeSieur I and with multiple orders of the referee. We therefore determine that Attorney LeSieur's license to practice law in Wisconsin should be suspended until such time as he meets the requirements we set forth below, that the conditions on his practice of law in this state should be extended for an additional period of two years following the date on which his license is reinstated, and that he should be required to pay the full costs of this motion proceeding.

¶3 The conduct underlying the original charge against Attorney LeSieur was his third conviction for driving while

2

intoxicated (OWI).[1]   In addition to publicly reprimanding Attorney LeSieur, the court placed a number of conditions on his continued practice of law.   In particular, the LeSieur I decision and order required Attorney LeSieur to execute one or more releases that complied with the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 201 et seq., and all applicable federal and state laws and that authorized the disclosure of his health records for each treatment provider who was providing or had provided alcohol-related or substance abuse-related treatment or services to Attorney LeSieur within the preceding ten years.   The releases were to authorize disclosure to his treatment providers so that they could share information regarding his condition and to the OLR so that it could monitor his situation and ensure compliance with the conditions imposed on his practice.   The court's order in LeSieur I directed the OLR to maintain the confidentiality of all of the documents or information it received.   Our order required the release(s) signed by Attorney LeSieur to remain in effect for a period of two years.

¶4   The order in LeSieur I further required Attorney LeSieur to undergo an alcohol and other drug abuse (AODA) evaluation by a professional AODA counselor or treatment provider, who was to produce a written report of the evaluation. The written report was required to include recommendations for

---

[1] Although it was Attorney LeSieur's third OWI conviction, it was the fifth time that he had been arrested for OWI.

3

Attorney LeSieur's continuing treatment or maintenance. Attorney LeSieur was ordered to comply with all such recommendations.

¶5 Finally, the LeSieur I order mandated that for a period of two years, Attorney LeSieur must undergo random alcohol and substance abuse screenings at his own expense. The OLR was instructed to direct and monitor these screenings.

¶6 In June 2011 the OLR filed the motion now under consideration.[2] Its motion simply moved the court to issue an order requiring Attorney LeSieur to show cause why his license should not be suspended for willful failure to comply with the conditions set forth in LeSieur I. Supporting the motion was an affidavit of Linda Albert, the monitoring supervisor of the Wisconsin Lawyers Assistance Program (WisLAP). Albert's affidavit stated that following the issuance of the LeSieur I decision, the OLR had referred Attorney LeSieur to WisLAP as its designee for monitoring the conditions imposed on his practice. The affidavit provided a detailed recitation of WisLAP's interactions with Attorney LeSieur. After receiving a sufficient AODA assessment from the AODA counselor that Attorney LeSieur had been seeing and after discussions with Attorney LeSieur, WisLAP finally received a signed monitoring contract in March 2011. Albert alleged that over the course of the next

---

[2] As it did in In re Disciplinary Proceedings Against Lister, 2012 WI 102, 343 Wis. 2d 532, 817 N.W.2d 867, the OLR filed the present motion for a suspension in the original disciplinary proceeding rather than initiating a separate investigation and new disciplinary proceeding.

month, Attorney LeSieur had violated the WisLAP monitoring contract and the conditions imposed in LeSieur I in a number of ways.

¶7 This court initially directed the OLR to provide the legal basis for bringing such an enforcement motion in the underlying disciplinary proceeding rather than filing a new complaint and to explain the nature of the suspension it was seeking. The OLR subsequently responded that, although it could bring a new complaint alleging a charge of noncompliance with a court order, it brought the motion seeking an order to show cause as a way to expedite the matter. It further stated that it was seeking an indefinite suspension of Attorney LeSieur's license until such time as he complied with the conditions imposed in LeSieur I. Finally, it asserted that this court had a legal basis either under its contempt powers or its inherent authority to regulate the practice of law in this state to suspend Attorney LeSieur's license immediately after issuing an order to show cause and receiving a response.

¶8 Without deciding the motion, we issued an order on October 14, 2011, requiring Attorney LeSieur to file a response to the OLR's motion and referring the motion to a referee since there appeared to be potential disputes of fact. Our order directed the referee to conduct an evidentiary hearing and then to file a report that contained (1) findings of fact "as to all relevant facts that relate to Attorney LeSieur's compliance or noncompliance with the conditions set forth in the court's [LeSieur I decision]," (2) conclusions of law as to "whether

Attorney LeSieur's conduct has or has not violated those conditions," and (3) a recommendation as to what sanctions or discipline, if any, should be imposed on Attorney LeSieur if he was found to have failed to comply with the conditions in LeSieur I.

¶9  Reserve Judge William Eich was ultimately appointed as the referee.  The OLR filed two motions before the referee.  One motion sought an order from the referee directing Attorney LeSieur to sign a new release of medical records.  Attorney LeSieur initially signed such a release on October 27, 2010, as required by the LeSieur I decision.  On October 26, 2011, however, Attorney LeSieur notified the OLR that he was revoking that release.  The OLR's motion asked the referee to order Attorney LeSieur to sign a new copy of that same release.

¶10 Attorney LeSieur objected to signing another release form because he viewed the OLR's release as going beyond what this court had ordered in LeSieur I and because he viewed the information already released to have been improperly disclosed to inappropriate persons/entities, including WisLAP and others with whom WisLAP had spoken.  He also objected that the release violated both HIPAA and state law because it did not limit the use of the released information to the present disciplinary proceeding and because it did not require the return or destruction of all copies of released records upon completion of this disciplinary proceeding.

¶11 The OLR's second motion asked the referee to order Attorney LeSieur to undergo an independent medical examination

(IME) by addiction psychiatrist Dr. Thomas Rowell. The request for a second, independent examination by a specific addiction psychiatrist stemmed from WisLAP, which alleged that although Attorney LeSieur had undergone an AODA evaluation by the counselor he had already been seeing, in compliance with the LeSieur I requirement, he was not being sufficiently forthcoming with his counselor and other health care providers and not being sufficiently compliant with its monitoring program. It made this evaluation by an independent addiction psychiatrist one of the terms of a modified monitoring contract that it demanded Attorney LeSieur must sign.

¶12 Attorney LeSieur refused to execute the modified contract because, among other things, he viewed the requirement of another evaluation by an addiction psychiatrist as beyond the scope of the LeSieur I decision and as an additional financial burden he should not have to bear.

¶13 In a decision and order dated February 28, 2012,[3] the referee generally rejected Attorney LeSieur's objections to the OLR's release form as exceeding the scope of the LeSieur I decision, with the exception of a single phrase that the referee deleted. The referee therefore found Attorney LeSieur to be out of compliance with his obligation to sign a release form and ordered Attorney LeSieur to execute the release proffered by the OLR (with the deletion of the single phrase).

---

[3] The order was filed with the clerk of this court on March 1, 2012. Because the referee referred to his decisions and orders by the dates on which he signed them, this opinion will also do so in order to avoid confusion.

7

¶14 The referee also rejected Attorney LeSieur's arguments against an order for an IME. Attorney LeSieur contended that the referee lacked authority to issue such an IME order because (1) the rule of civil procedure authorizing IMEs, Wis. Stat. § 804.10, speaks of "the court in which the action is pending" as the entity that can order an IME, and (2) an IME was not mentioned as one of the conditions of practice set forth in the LeSieur I decision. The referee concluded that since SCR 22.16 gave him the powers of a circuit court trying a civil matter, he had the authority to order an IME. He also concluded that the results of an IME would be relevant to whether Attorney LeSieur had violated the conditions imposed in LeSieur I and to what the appropriate sanction might be. He therefore ordered Attorney LeSieur to schedule an appointment with Dr. Rowell.

¶15 When the referee learned that Attorney LeSieur had not complied with the February 28, 2012 order, he issued a second order on April 18, 2012, explicitly directing Attorney LeSieur to execute the revised medical release and to schedule an appointment with Dr. Rowell by April 25, 2012.

¶16 Attorney LeSieur did not comply with the referee's orders. Instead, he filed a motion for a protective order in this court seeking to have the referee's interlocutory orders declared unlawful and void. In an order dated May 22, 2012, this court denied the motion as an improper attempt at an interlocutory appeal. Because Attorney LeSieur's motion complained that the OLR's release form was still broader than the language of the court's order in LeSieur I, the May 22, 2012

8

order further clarified that the release that Attorney LeSieur must sign should include the records of health care providers or mental health providers

> relating to the prescribing of, the use of, or the potential use of (1) potentially addictive pain medications, (2) anti-depressant or anti-anxiety medications, or (3) mood-altering medications. The release need not authorize the disclosure of (a) medical records that were/are not created by treatment providers who are providing or have provided alcohol-related or substance abuse-related treatment or services and (b) medical records that were/are not related to the prescribing of, the use of, or the potential use of (1) potentially addictive pain medications, (2) anti-depressant or anti-anxiety medications, or (3) mood-altering medications.

The court also directed the referee to give further consideration to Attorney LeSieur's arguments that the OLR's release failed to comply with HIPAA and its regulations and with Wis. Stat. § 146.82.

¶17 The referee invited additional briefing from Attorney LeSieur on the HIPAA and § 146.82 issues. Attorney LeSieur argued that compliance with HIPAA required the releases to state (1) that the parties were prohibited from using or disclosing his protected health information for any purpose other than the present disciplinary proceeding, and (2) that all parties receiving copies of his protected health records must return or destroy those records at the conclusion of this proceeding.

¶18 In addition, because Attorney LeSieur continued to refuse to sign the release or to schedule an IME with Dr. Rowell, the OLR filed a motion asking the referee to conclude that Attorney LeSieur was in default as a sanction for

9

his disobedience of the referee's orders and to issue a report on the basis of the allegations in the OLR's original motion for a suspension.

¶19 In an order dated July 23, 2012, the referee addressed both the HIPAA issues and the OLR's motion for default. With respect to the release form's compliance with HIPAA, the referee indicated that while he found the OLR's releases to be in compliance with HIPAA and applicable Wisconsin statutes, he nonetheless believed that "it would not be inappropriate" to add Attorney LeSieur's requested brief additions to the release forms, and he directed the OLR to do so. The referee, however, found that Attorney LeSieur had failed to offer any reasons to make additional alterations to the releases. He therefore once more ordered Attorney LeSieur to execute the release forms, as modified. He also again ordered Attorney LeSieur to make an appointment for an IME with Dr. Rowell within 10 business days and to respond to the OLR's discovery requests.

¶20 With respect to the OLR's default motion, the referee found that Attorney LeSieur's conduct was indeed egregious, which would support finding him to be in default. The referee, however, declined to declare Attorney LeSieur to be in default or impose other sanctions at that time. Giving Attorney LeSieur one more chance, the referee held the OLR's default motion in abeyance "pending [Attorney] LeSieur's compliance with the terms and conditions [of the July 23, 2012 order]."

¶21 Attorney LeSieur responded to the July 23, 2012 order in three ways. First, he sent a letter to the referee that

10

again argued that the referee lacked authority to order the IME. Second, Attorney LeSieur altered the release form in a number of significant ways that he believed to be appropriate, executed the revised form, and then sent it to the OLR. Third, Attorney LeSieur did respond to the OLR's discovery requests, but the OLR asserted that several of his answers were nonresponsive to the actual requests.

¶22 The OLR brought the alteration of the release form and its belief that some discovery responses were nonresponsive to the attention of the referee. The OLR asked the referee to take up again its motion for sanctions, including a declaration of default, due to Attorney LeSieur's continuing noncompliance with the referee's orders.

¶23 In light of Attorney LeSieur's response to his July 23, 2012 order, the referee proceeded to issue a final report and recommendation on August 16, 2012.

¶24 The referee noted that where a respondent attorney engages in conduct during a disciplinary proceeding that is found to be egregious, a referee is warranted, as a sanction for violation of the referee's orders, to declare the respondent attorney to be in default and to proceed on the basis of the OLR's complaint. In re Disciplinary Proceedings Against Kelly, 2012 WI 55, ¶24, 341 Wis. 2d 104, 814 N.W.2d 844; In re Disciplinary Proceedings Against Semancik, 2005 WI 139, ¶26, 286 Wis. 2d 24, 704 N.W.2d 581.

¶25 The referee once more found Attorney LeSieur's persistent and ongoing refusal to comply with the order of this

11

court and with the referee's orders to be egregious. In particular, the referee pointed to the fact that Attorney LeSieur had willfully disobeyed the referee's three orders to execute the medical records release form and to schedule an IME with the designated addiction psychiatrist. The referee further noted that in the ten months that had passed since the referral of the matter to the referee, the situation regarding Attorney LeSieur had remained essentially the same as it had been at the time of the court's order. Although Attorney LeSieur had been ordered multiple times to execute the medical records release form, he still had not done so, except for signing a release form that he had unilaterally and significantly altered to comport with his view of what was lawful. The referee therefore concluded that, based on the allegations contained in the OLR's motion and accompanying affidavit, which were now established as true due to Attorney LeSieur's default, Attorney LeSieur had intentionally failed to comply with the conditions imposed on his practice in this court's LeSieur I decision and with the referee's multiple orders.

¶26 Given Attorney LeSieur's noncompliance and the court's concern for monitoring Attorney LeSieur's alcohol dependence, the referee made four recommendations to the court:

- Attorney LeSieur's license to practice law in Wisconsin should be suspended forthwith;
- Because Attorney LeSieur has not yet complied with the conditions imposed on his practice of law by this court in LeSieur I, those conditions should be extended for an

12

additional two years from the date of their expiration or the date on which Attorney LeSieur's license is reinstated, whichever is later;

- Attorney LeSieur should be ordered to submit to monitoring of his compliance with those conditions by WisLAP, as the OLR's designee; and

- Attorney LeSieur should be ordered to submit to an IME and evaluation by Dr. Rowell.

¶27 Following the filing of the referee's report, although there is no rule that specifically authorizes an appeal from a referee's report in this type of situation, Attorney LeSieur filed a document labeled an "appeal" from the referee's report. The "appeal" made essentially the same arguments that Attorney LeSieur had made to the referee regarding the referee's lack of authority to order him to sign release forms or undergo an IME. It also objected to the presence or absence of certain language in the release forms.

¶28 On September 17, 2012, in light of the referee's report and recommendation, this court issued an order directing Attorney LeSieur to show cause why his license should not be suspended. Attorney LeSieur filed a short response, in which he essentially argued that this court's procedure for considering the OLR's motion was a violation of the court's own rules. He noted this court's comments in In re Disciplinary Proceedings Against Lister, 2012 WI 102, ¶¶19-22, 343 Wis. 2d 532, 817 N.W.2d 867 (Lister II), where we recognized that there are no specific rules that address the post-discipline type of motion

13

filed by the OLR in that case and this one and explained the basis for referring the OLR's motion to a referee. Attorney LeSieur argued that because the rules provide a complete procedure for investigating and prosecuting violations of the Rules of Professional Conduct for Attorneys, the OLR and the court were bound to use only that procedure for litigating his alleged violation of his obligations under LeSieur I. In other words, he contended that the OLR should have been required to obtain a finding of cause to proceed from a preliminary review committee and then should have filed a new disciplinary complaint rather than filing a sanction motion in the existing disciplinary case. According to Attorney LeSieur, that complaint should have been handled in the ordinary manner under SCRs 22.16-22.17, with a referral to a referee and then an opportunity for a full appeal. In any event, he asserted that his appeal of the referee's report and recommendation was still proper under SCR 22.17 and that this court should review the referee's report in the context of his appeal (after full briefing and possibly oral argument).

¶29 First, we will address Attorney LeSieur's arguments regarding the procedures used to resolve any factual issues regarding the OLR's motion and to review the referee's report and recommendation. As an initial matter, while we again acknowledge that our rules do not contain an explicit procedure for resolving a motion alleging a violation of a prior disciplinary order in the same disciplinary proceeding, we reiterate that the procedure we followed in both Lister II and

14

this case follows a procedure similar to the one that we utilized in In re Disciplinary Proceedings Against Hetzel, 124 Wis. 2d 462, 369 N.W.2d 394 (1985). That procedure gave Attorney LeSieur notice of the allegations against him through the OLR's motion and allowed Attorney LeSieur the opportunity to present evidence and argument to a referee regarding what he did in response to our LeSieur I order and whether his actions violated his obligations under that order. Although this court's rules provided the OLR a basis on which it could have chosen to proceed with an entirely new disciplinary complaint in a new proceeding, there is no existing rule that expressly requires it to initiate a separate disciplinary case when seeking to compel compliance with an order of this court. Thus, we reject Attorney LeSieur's contention that our referral of the OLR's motion in the underlying disciplinary proceeding to a referee was a violation of our rules.

¶30 We also reject Attorney LeSieur's argument that we are compelled to recognize his "appeal." Rule 22.17 is part of the set of rules that govern the procedure for handling formal disciplinary complaints filed by the OLR. Rules 22.11-22.18 provide the procedure that is to be followed by the OLR and a respondent attorney for litigating and reviewing a formal complaint in the first instance. Rule 22.17, which authorizes an appeal, is just one part of that procedure. Thus, the context makes clear that SCR 22.17 applies to referee reports that are addressed to an OLR complaint. Attorney LeSieur already had the benefit of such a full litigation procedure and

15

full appeal when the OLR's complaint in this case was initially considered. This court ultimately rejected his appeal, and imposed a public reprimand and conditions on his continued practice of law. LeSieur I, 329 Wis. 2d 349, ¶¶15, 18, 20-24.

¶31 The OLR filed a motion in the same disciplinary proceeding seeking the imposition of a sanction due to Attorney LeSieur's failure to comply with the conditions we imposed. This was a motion in an existing proceeding and not a new complaint. Thus, the full procedure of SCRs 22.11-22.18 did not apply by its terms. Although we referred the motion to a referee for the completion of certain tasks, which mirrored the way in which a complaint would be handled, that does not mean that the report the referee filed in response to our referral order gives rise to a right to appeal under SCR 22.17. Indeed, because we noted this fact in Lister II, we issued an order in that proceeding that afforded the parties an opportunity to object to the referee's report. 343 Wis. 2d 532, ¶23. We did essentially the same thing in this case when we issued an order to show cause to Attorney LeSieur. He was given notice of the referee's findings by receiving a copy of the referee's report and an opportunity to be heard regarding why the referee's findings should not lead to a suspension of his license to practice law in Wisconsin.

¶32 We now turn to our review of the referee's report. As in other review situations, we will affirm the referee's findings of fact unless they are clearly erroneous, but we will review the referee's conclusions of law on a de novo basis.

16

Lister II, 343 Wis. 2d 532, ¶23; see also In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. "We will determine the appropriate type and level of sanction or discipline given the particular facts of the case, independent of the referee's recommendation, but benefiting from it." Lister II, 343 Wis. 2d 532, ¶23; see also In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶33 Our review of this case, however, is framed by the fact that the referee declared Attorney LeSieur to be in default due to his repeated refusal to comply with the orders of the referee. Thus, the issues we review are limited to whether the referee erroneously exercised his discretion in finding that Attorney LeSieur had repeatedly disobeyed the referee's orders and therefore whether a declaration of default and the resulting disregard of his substantive arguments were proper. See Martin v. Griffin, 117 Wis. 2d 438, 344 N.W.2d 206 (Ct. App. 1984) (limiting review of default judgment entered following failure to answer to whether trial court properly exercised its discretion in granting default and determining that defendant's substantive arguments had been waived by default).

¶34 In this instance, the referee declared Attorney LeSieur to be in default, disregarded his substantive response to the OLR's motion, and proceeded on the basis of the facts alleged in the OLR's motion and supporting materials due to Attorney LeSieur's conduct during the consideration of the motion. This is akin to a circuit court granting a judgment by

17

default in a civil case because the defendant failed to obey court orders or statutory requirements or to provide discovery. See, e.g., Wis. Stat. §§ 802.10(7) (violation of scheduling or pretrial order), 804.12 (failure to provide discovery), and 805.03 (failure to prosecute action or to comply with procedural statutes). We have held that referees in disciplinary cases may similarly declare a respondent attorney to be in default when the attorney has disobeyed the referee's scheduling or pretrial orders, violated applicable rules of procedure, or failed to comply with his/her discovery obligations in the disciplinary proceeding. See, e.g., In re Disciplinary Proceedings Against Kelly, 2012 WI 55, ¶21, 341 Wis. 2d 104, 814 N.W.2d 844; In re Disciplinary Proceedings Against Semancik, 2005 WI 139, ¶26, 286 Wis. 2d 24, 704 N.W.2d 581; In re Disciplinary Proceedings Against Haberman, 128 Wis. 2d 390, 391-92, 395, 382 N.W.2d 439 (1986). Because of the drastic nature of such a sanction, however, as in civil cases, we have required the referee to find that the respondent attorney's actions were "egregious" or "in bad faith" before declaring a respondent attorney to be in default. Kelly, 341 Wis. 2d 104, ¶22 (citations omitted). An "extreme, substantial and persistent" failure to follow a referee's orders without a clear and justifiable excuse can constitute egregious conduct. See Industrial Roofing Serv. v. Marquardt, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898 (citations omitted).

¶35 In this case the referee found that Attorney LeSieur's repeated violation of his "pretrial" orders constituted

18

"egregious" conduct that warranted disregarding his response to the motion and proceeding on the basis of the allegations in the OLR's motion and supporting documents. Generally, we will sustain such a finding and sanction "if there is a reasonable basis for the circuit court's [or referee's] determination that the noncomplying party's conduct was egregious and there was no 'clear and justifiable excuse' for the party's noncompliance." Johnson v. Allis Chalmers Corp., 162 Wis. 2d 261, 276-77, 470 N.W.2d 859 (1991), overruled on other grounds by Industrial Roofing, 299 Wis. 2d 81, ¶61; see also id., ¶41 (decision to impose sanction in standard civil action and the choice of which sanction to impose are reviewed for erroneous exercise of discretion).[4]

¶36 The referee's finding of egregiousness and declaration of default is not an erroneous exercise of discretion in this case. The evidence is clear that Attorney LeSieur has repeatedly and willfully refused to comply with the terms of orders issued both by the referee and this court. In LeSieur I, this court ordered Attorney LeSieur to execute a release for certain categories of information. He did execute such a release, but it is undisputed he then revoked that release

---

[4] There is no issue in this case regarding whether an attorney's conduct can be imputed to a party for purposes of imposing a sanction because Attorney LeSieur has represented himself throughout this proceeding. Cf. Industrial Roofing, 299 Wis. 2d 81, ¶61 (erroneous exercise of discretion to impute attorney's conduct to client and enter a sanction of dismissal where client is blameless).

approximately one year later, one year prior to the expiration date for the release established by this court. The referee ordered him on two occasions to sign a new copy of the release, from which one potentially problematic phrase had been removed. Attorney LeSieur, however, did not execute the release in compliance with either order. He did not execute the release even after this court denied his motion for interlocutory review and directed the referee to proceed with the matter and give further consideration to Attorney LeSieur's arguments based on HIPAA and Wis. Stat. § 146.82. Attorney LeSieur raised only two claims that the release form did not comply with those privacy provisions of state and federal law. In an effort to address Attorney LeSieur's concerns, the referee directed the OLR to add language to the release form that addressed Attorney LeSieur's two requests and directed him yet again to execute the release as now revised. Even after obtaining what he wanted, Attorney LeSieur still disregarded the referee's third order and signed the release only after substantially modifying it to his liking.

¶37 Attorney LeSieur's noncompliance did not end with his refusal to execute a release form as ordered. There is no dispute that he also repeatedly refused to undergo an independent medical examination by an addiction specialist. The referee's orders to undergo such an examination were clear, but Attorney LeSieur willfully disobeyed the orders. While he may not have agreed with the orders, Attorney LeSieur is not authorized to determine which orders he will obey and which he is entitled to flaunt or modify to his liking. Especially once

20

this court had rejected his interlocutory appeal, he should have understood that he had no choice but to comply with the orders of the referee. He continued, however, to refuse to undergo an IME, which supports a presumption that he has not been in compliance with his obligations under our order in LeSieur I and lacked a meritorious defense to the OLR's motion.

¶38 Finally, we note that the referee found in one of his interlocutory orders that Attorney LeSieur had failed to comply with his obligations to respond to the OLR's discovery requests and that he had not provided a lawful basis for his noncompliance. His failure to provide proper discovery responses also warrants a presumption that he lacked a defense to the OLR's motion.

¶39 Attorney LeSieur does not deny that these events happened or that he chose not to comply with the referee's orders. An attorney is not free to disregard the orders issued by a referee in an attorney disciplinary proceeding, even when the attorney believes that the referee's orders are invalid or require modification. Only this court may declare a referee's orders invalid or excuse an attorney from complying with them. We see no reason to invalidate the orders issued by the referee in this matter. Attorney LeSieur's repeated and willful failure to comply with those orders is therefore egregious and merits finding him to be in default with respect to the OLR's motion. We therefore agree with the referee that the OLR's allegations that Attorney LeSieur failed to comply with the provisions of

21

this court's order in LeSieur I are accepted as true by virtue of Attorney LeSieur's default.

¶40 We turn now to the appropriate sanction that should be imposed as a result of Attorney LeSieur's noncompliance with our orders. Attorney LeSieur has been convicted on three occasions of operating a motor vehicle while intoxicated and was arrested on suspicion of that offense on two other occasions that did not result in valid convictions. Attorney LeSieur's record indicates a potential problem with alcohol and other addictive or mood-altering medications. He claimed during the initial disciplinary proceeding that he has not consumed alcohol since 2006. If that is accurate, he is to be commended. His refraining from alcohol indicates some recognition that he has problems in this area that require affirmative steps. On the other hand, his actions since the release of LeSieur I indicate repeated attempts to thwart the monitoring of his condition by the OLR and its designee. One who is truly eager to overcome any problems with alcohol or mood-altering medications would welcome assistance, but Attorney LeSieur has frustrated the efforts of this court, the referee, and WisLAP to ensure that he remains on a productive path. This is a troubling pattern.

¶41 We simply cannot tolerate such disobedience of our orders. Accordingly, we will suspend Attorney LeSieur's license until he complies with the orders of this court. To leave no room for doubt or argument, we will clarify the nature of the release Attorney LeSieur must now sign and we will expressly require him to undergo an independent medical examination by

22

Dr. Thomas Rowell or another addiction psychiatrist or other treatment provider designated by the OLR. Given Attorney LeSieur's failure to comply thus far, the conditions that we imposed in LeSieur I and those we add in this opinion shall be extended to remain in effect for a period of two years from the date on which Attorney LeSieur's license is reinstated.

¶42 We now turn to the issue of costs. The OLR has indicated that the costs of this supplemental proceeding due to Attorney LeSieur's noncompliance were $8,987.16 as of September 6, 2012. We find no reason to depart from our general practice of requiring a respondent attorney, whose conduct caused the OLR to bring this proceeding, to pay the full costs of the proceeding. Attorney LeSieur's conduct led to the filing of the OLR's motion and the resulting proceedings. He should therefore be required to pay the associated costs.

¶43 IT IS ORDERED that the license of Barry LeSieur to practice law in Wisconsin is suspended, effective May 20, 2013, until such time as he demonstrates full compliance with the following conditions and until further order of the court:

(A) Barry LeSieur shall sign reciprocal releases of confidentiality. Such release or releases shall authorize the disclosure of Barry LeSieur's health records possessed by each treatment provider who is providing or has provided alcohol-related or substance abuse-related treatment or services to Barry LeSieur since September 30, 2000, and shall also authorize the disclosure by health care providers or mental health providers of health records relating to the prescribing of, the

23

use of, or the potential use of (1) potentially addictive pain medications, (2) anti-depressant or anti-anxiety medications, or (3) mood-altering medications. Such release or releases shall authorize disclosure to all other health care or mental health providers covered by the release or releases and to the Office of Lawyer Regulation and those persons or entities that it designates to assist it in monitoring Barry LeSieur's compliance with his obligations under this order. The Office of Lawyer Regulation and its designees shall maintain as confidential all information or documents received pursuant to such release or releases and shall use such information or documents for the purpose of monitoring Attorney LeSieur's compliance with the obligations imposed on him by the orders of this court. The release or releases required by this paragraph shall remain in effect for a period of two years from the date on which Attorney LeSieur's license to practice law in Wisconsin is reinstated by this court. The release or releases to be signed by Attorney LeSieur shall comply with this paragraph and may be in a form substantially similar to the release form attached as Exhibit 2 to the referee's report filed on August 27, 2012, without any of the alterations made to that release form by Attorney LeSieur. The release form shall be modified to include the expiration date identified above. Attorney LeSieur must sign the release or releases in the form provided to him by the Office of Lawyer Regulation and may not make any modifications or alterations to the language of the release. For purposes of the return or destruction of disclosed medical records, this disciplinary

24

proceeding will be completed at such time as Attorney LeSieur is no longer subject to any conditions on his practice of law in Wisconsin.

(B) Barry LeSieur shall schedule and undergo an independent medical examination and evaluation by Dr. Thomas Rowell or another addiction psychiatrist or other treatment provider designated by the Office of Lawyer Regulation. The addiction psychiatrist or other treatment provider who performs this examination and evaluation shall provide to the Office of Lawyer Regulation a written report, which assesses Barry LeSieur's substance abuse history and current status and makes specific recommendations for Barry LeSieur's continuing treatment or maintenance. This written report shall be maintained by the Office of Lawyer Regulation and its designees as confidential pursuant to the release or releases described in the preceding paragraph. If Attorney LeSieur attempts to schedule an appointment with Dr. Rowell and he is unable to see Attorney LeSieur within 60 days after the date of this order, the Office of Lawyer Regulation shall designate another addiction specialist or treatment provider who will be able to conduct the independent examination and evaluation within 60 days.

(C) Barry LeSieur shall enter into the amended monitoring contract with the Wisconsin Lawyers Assistance Program as previously submitted to him by that program.

¶44 IT IS FURTHER ORDERED that prior to seeking reinstatement and continuing for a period of two years following

25

the reinstatement of his license, Barry LeSieur shall, at his own expense, submit to random alcohol and substance abuse screenings, directed and monitored by the Office of Lawyer Regulation and its designee.

¶45  IT IS FURTHER ORDERED that Barry LeSieur shall comply with all written recommendations set forth in the original AODA evaluation and with all written recommendations set forth in the written evaluation report that results from the independent medical examination described in ¶43(B) of this opinion and order.

¶46  IT IS FURTHER ORDERED that the conditions on Barry LeSieur's practice of law in Wisconsin set forth in this opinion shall remain in effect for a period of two years from the date on which this court reinstates Barry LeSieur's license to practice law.

¶47  IT IS FURTHER ORDERED that within 60 days of the date of this order, Barry LeSieur shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶48  IT IS FURTHER ORDERED that Barry LeSieur shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.